

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

January 22, 1957

Honorable E. N. Jones, President
Texas Technological College
Lubbock, Texas

                              Opinion No. WW-5

                              Re: Authority of Board of
                                  Directors of Texas Tech-
                                  nological College to en-
                                  gage in educational tele-
                                  vision broadcasting on a
                                  non-commercial basis.

Dear Sir:

        Your letter of January 8, 1957, relates that Texas
Technological College has petitioned the Federal Communica-
tions Commission to change the designation of T. V. Channel
5 in Lubbock from a commercial to an educational channel and
has filed an application for permission to operate a T. V.
station. The Federal Communications Commission has asked
for clarification of the authority of the College to engage
in such an activity.

        The question to be determined is whether the Board
of Directors of the College has authority to engage in educa-
tional television broadcasting on a non-commercial basis.

        Article 2629 of Vernon's Civil Statutes sets forth
the purposes of the Texas Technological College as follows:

        "The Texas Technological College at Lubbock
    shall be a co-educational college giving thorough
    instruction in technology and textile engineering
    from which a student may reach the highest degree
    of education along the lines of manufacturing cot-
    ton, wool, leather and textile engineering, the
    chemistry of materials, the technique of weaving,
    dyeing, tanning and the doing of any and all other
    things necessary for the manufacturing of raw materials
    into finished products; and said college shall also
    have complete courses in the arts and sciences,

physical, social, political, pure and applied,
such as are taught in colleges of the first class,
leading to the degrees of bachelor of science,
bachelor of arts, bachelor of literature, bachelor
of technology and any and all other degrees given
by colleges of the first class; said college being
designed to elevate the ideals, enrich the lives and
increase the capacity of the people for the demo-
cratic self-government, and particularly to give
instruction in technology, manufacturing and agri-
cultural pursuits, domestic husbandry and home
economics so that the boys and girls of this State
may attain their highest usefulness and greatest
happiness and in so doing, may prepare themselves
for producing from the State its greatest possi-
ble wealth."

Article 2631 of Vernon's Civil Statutes relates to
the courses of study to be offered by the college and reads
as follows:

"In addition to the courses provided in
technology and textile engineering, said college
shall offer the usual college courses given in
standard senior colleges of the first class and
shall be empowered to confer appropriate degrees to
be determined by the board of directors, and shall
offer four year courses, two year courses, or short
term courses in farm and ranch husbandry and econom-
ics and the chemistry of soils and the adaption of
farm crops to the peculiar soil, climate and condi-
tion of that portion of the State in which the col-
lege is located and such other courses and degrees
as the board of directors may see fit to provide as
a means of supplying the educational facilities
necessary for this section of the State. The Board
shall furnish such assistance to the faculty and
students of said college as will enable them to do
original research work and to apply the latest and
most approved method of manufacturing and, in gener-
al, to afford the facilities of the college for
the purpose of originating, developing, supporting
and maintaining all of those agencies for the de-
velopment of the physical, mental and moral welfare
of the students who attend the college and for the
further purpose of developing the material resources
of the State to their highest point of value and
usefulness by teaching the arts of commerce and

> manufacturing. All male students attending
> this college shall be required to receive such
> instruction in military science and tactics as
> the board of directors may prescribe which shall
> at all times, comply in full with the require-
> ments of the United States Government now given
> as a prerequisite to any aid now extended or
> hereafter to be extended by the Government of
> the United States to State institutions of this
> character and all such white male students shall,
> during their attendance at such college, be sub-
> ject to such military discipline and control as
> the board of directors may prescribe."

The powers and franchises of a college or university are in general such that may be conferred by charter, statutory or constitutional provisions, and an institution will ordinari-ly be accorded the right to perform acts incidental to its main purpose, although it will be denied the right to perform acts not reasonably incidental. Our examination and study of the Statutes indicates that the Legislature has seldom, if ever, undertaken by law to prescribe with exactness the courses of study, or related activities, of any of our state institutions of higher learning. Final determination of such matters has largely been left to the sound and wise discretion of the various governing authorities of said institutions with the limits of their authority being marked and defined in the most general terms.

In Article 2629 the Legislature expressly manifested an intention that Texas Technological College be "a college of the first class" and that said college was designed "to elevate the ideals, enrich the lives and increase the capacity of the people for the democratic self-government". The ac-complishment of such purposes is the primary responsibility of the Board of Directors of the college.

The Supreme Court of Montana in the case of State ex rel. Public Service Commissioner v. Brannon, 86 Mont. 200, 283, p. 202, described the functions of the modern university in the following language:

> "The activities of modern universities embrace
> a wider scope than mere teaching. . . . Indeed,
> the potentialities of service which may be render-
> ed through these agencies cannot be compassed by
> any small measure. The knowledge diffused by these
> institutions radiates far beyond the student body."

The case of <u>Ingram v. Texas Christian University</u>, 196 S.W. 610, Court of Civil Appeals, Fort Worth, concerned the authority of that institution to maintain a hospital in connection with its medical school, said hospital rendering medical services to certain classes not connected with the school, as well as the general student body. It was urged that such an activity was ultra vires of the school charter which defined the purposes of the school in the following terms:

"... The support of an educational under-
taking, to-wit the establishment and maintenance
of an institution of learning of university rank
for the education and training of students in the
arts, sciences and languages and in all branches
of learning."

The court held that it was not ultra vires of the school's corporate charter to establish and maintain a hospital in connection with its medical school and the university as a whole, that such activity was "within the purview of the recited charter purposes of the university and was within the legitimate objects of its creation".

An Attorney General's letter opinion dated January 27, 1948, addressed to Honorable Frank C. Smith, President of the Board of Directors of Texas College of Arts and Industries, up-held the right of that institution to permit the installation and operation of a broadcasting studio on the college campus. The building was to be constructed and equipped by a private individual, the building to become the property of the State but ownership of the equipment to be retained by the individual. Although the opinion dealt with the question presented primarily in the light of the provisions of Senate Bill 393, page 262, Acts of the 46th Legislature, Regular Session, 1939, which concerned gifts and bequests to our institutions of higher learning, it did use language which we consider pertinent to your inquiry as follows:

"Thus, your Board is not authorized to permit
the construction on the campus of a broadcasting
studio to be used primarily for commercial purposes,
with only incidental benefits to the college. The
determination of whether the proposed installation
in question meets the statutory requirements herein-
before set out is a matter within the sound discre-
tion of your Board."             /

We, therefore, conclude that the question of whether the Board of Directors of Texas Technological College may engage in educational television broadcasting on a non-commercial basis is a question that rests within the sound discretion of said Board; that if, in the exercise of such discretion, the Board ascertains that such an activity is reasonably necessary for the accomplishment of the recited statutory purposes of the college and within the legitimate objects of its creation, said Board may legally engage in such an activity.

Since the question is not raised by your inquiry, this opinion shall not be construed as dealing with the authority of the college to engage in any type of television broadcasting on a commercial basis, in whole or in part, and neither do we pass upon the question of the availability of funds for such activities, either commercial or non-commercial.

## SUMMARY

The Board of Directors of Texas Technological College has the authority to engage in educational television broadcasting on a non-commercial basis provided that said Board, in the exercise of sound discretion, determines that such activity is reasonably necessary for the accomplishment of the statutory purposes of the college and within the legitimate objects of its creation.

Yours very truly,

WILL WILSON
Attorney General

By _Leonard Passmore_
Leonard Passmore
Assistant

LP:zt

APPROVED:

OPINION COMMITTEE

H. Grady Chandler, Chairman